# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# NORTHERN DIVISION

**RHONDA FOGG**                                                      **PLAINTIFF**

**V.**                 **NO. 3:21-CV-00140-JTK**

**KILOLO KIJAKAZI, ACTING COMMISSIONER of**
**SOCIAL SECURITY ADMINISTRATION**[1]            **DEFENDANT**

## ORDER

**I.  Introduction:**

On March 4, 2019, Plaintiff, Rhonda Fogg ("Fogg"), applied for disability benefits, alleging a disability onset date of December 1, 2018. (Tr. at 29). The claim was denied initially and upon reconsideration. *Id*. In a written decision dated December 2, 2020, an Administrative Law Judge ("ALJ") denied Fogg's application. (Tr. at 39). The Appeals Council denied her request for review. (Tr. at 1). The ALJ's decision now stands as the final decision of the Commissioner, and Fogg has requested judicial review.

For the reasons stated below, the Court [2] affirms the decision of the Commissioner.

**II.  The Commissioner's Decision:**

---

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration and is substituted as the Defendant in this action. Fed. R. Civ. P. 25(d).

[2] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge.

The ALJ found that Fogg had not engaged in substantial gainful activity since the alleged onset date of December 1, 2018.[3] (Tr. at 31-32). The ALJ found, at Step Two, that Fogg had the following severe impairments: migraine headaches, essential tremors, depression, and post-traumatic stress disorder ("PTSD"). (Tr. at 32).

After finding that Fogg's impairments did not meet or equal a listed impairment (Tr. at 32-33), the ALJ determined that Fogg had the residual functional capacity ("RFC") to perform the work at the medium exertional level, with the following additional limitations: (1) she cannot constantly use, but can frequently use, the upper extremities to handle, finger, and feel; (2) she is limited to simple routine, and repetitive work; and (3) she can make simple work-related decisions with occasional interaction with supervisors, coworkers, and the public. (Tr. at 34).

At Step Four, the ALJ found that Fogg was unable to perform any of her past relevant work. (Tr. at 38). At Step Five, the ALJ relied upon Vocational Expert ("VE") testimony to find that, based on Fogg's age, education, work experience and RFC, jobs existed in significant numbers in the national economy that she could

---

[3] The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g).

perform. (Tr. at 38-39). Therefore, the ALJ found that Fogg was not disabled. *Id.*

## III.   Discussion:

###     A.   Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); see also 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> Our review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision. Reversal is not warranted, however, merely because substantial evidence would have supported an opposite decision.

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co.*

*v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

    B. Fogg's Arguments on Appeal

Fogg contends that the evidence supporting the ALJ's decision is less than substantial. She argues that the ALJ did not properly consider the medical opinions of record. For the following reasons, the Court finds that substantial evidence supports the ALJ's decision.

Fogg complained of hand tremors, but she said that medication helped with her symptoms.[4] (Tr. at 83). She also suggested that she had disabling migraine headaches, but she did not require more than conservative care for migraines, including medications and medical marijuana. (Tr. at 32-36, 378-392, 624). The record shows that Fogg's migraines could be controlled by treatment. (Tr. at 593, 624). She denied headaches at clinic visits on multiple occasions. (Tr. at 549, 555, 564, 601, 609, 616).

Fogg certainly dealt with some mental health issues, including depression and PTSD. She treated once a week with a counselor (LPC Michelle Vest) for several

---

[4] Impairments that are controllable or amenable to treatment do not support a finding of total disability. *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000).

4

years, but only sought help from a psychiatrist in the few months before the hearing. (Tr. at 78-80). While certain events triggered symptoms of PTSD, in general, Fogg improved with treatment. Counselor Vest noted that she was participating in several classes in April 2018. (Tr. at 337). Fogg was using coping skills for grief and had improved mood and function in May 2018.[5] (Tr. at 338-340). In February 2019, Counselor Vest noted that Fogg was doing well; marriage counseling was helping, she had good support systems, and she had increased personal and emotional strength. (Tr. at 373-374). Also, she showed good focus, normal thought process, and normal thought content. *Id*.

Fogg saw her PCP, Sudesh Banaji, M.D., for general medication checks in 2019. (Tr. at 376-392). Her conditions were stable on April 16, 2019, except for a throbbing headache. *Id*. She had no psychiatric complaints. *Id*. She had normal neurological examinations. *Id*. Dr. Banaji recommended exercise, weight loss, better compliance with medications, and massage.[6] (Tr. at 381-388).

Fogg reported that she struggled with daily activities. But she said she could perform light yardwork and chores (her psychiatrist said in July 2020 that her

---

[5] Improvement in condition supports an ALJ's finding that a claimant is not disabled. See *Lochner v. Sullivan*, 968, F.2d 725, 728 (8th Cir. 1992).

[6] A physician's recommendation to exercise suggests that a claimant has an increased functional capacity. See *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009).

improved mood allowed her to perform these activities). (Tr. at 35-36, 80-82, 337-374, 646). She said she used Facebook and had joined grief groups there, and that she could use the computer to perform part-time work at a radio broadcasting company. (Tr. at 71-73, 81). She also used a computer for journaling. *Id*. Fogg said that she could occasionally shop in stores, but sometimes she had problems with panic attacks around people. (Tr. at 80-81). So instead, she ordered groceries for pick up. *Id*. Fogg could drive, she traveled, and she enjoyed fishing and quilting.[7] (Tr. at 36, 70).

Fogg asserts that the ALJ did not properly evaluate the medical opinions of record. On January 28, 2017, the Administration promulgated new regulations governing how ALJs assess medical opinion evidence. The new rules, with an effective date of March 27, 2017, focus on whether an opinion is persuasive, based on: (1) supportability; (2) consistency with the evidence; (3) relationship with the claimant [which includes; (i) length of treatment relationship; (ii) frequency of examinations; (iii) purpose of the treatment relationship; (iv) extent of the treatment relationship; and (v) examining relationship]; (4) provider specialization; and (5) any other important factors. See 20 C.F.R. § 404, 1520c(a)-(c)(2017). An opinion is

---

[7] *Gray v. Apfel*, 192 F.3d 799, 804(8th Cir. 1999) (activities of daily living considered with other evidence can support a finding of not disabled).

more persuasive if it is consistent with and supported by the medical evidence as a whole. 20 C.F.R. § 416.920c(c)(1-2) (2017); *Bonnett v Kijakazi*, 859 Fed. Appx. 19 (8th Cir. 2021); *Phillips v. Saul,* No 1:19-CV-00034-BD, 2020 U.S. Dist. LEXIS 110370 at *4 (E.D. Ark. June 24, 2020). An ALJ must give good reasons for his findings about an opinion's persuasiveness. *Id*.

ALJs are required to explain their decisions as to the two most important factors: supportability and consistency. 20 C.F.R. 404.1520(b)(2). These requirements are meant to provide individuals with a better understanding of the Commissioner's decision and provide sufficient rationale for a reviewing adjudicator or court. *Phillips*, supra; Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01 at 5854, 5858 (January 18, 2017).

Counselor Vest filled out a 3-page checkbox opinion in July 2019.[8] (Tr. at 463-465). Essentially, she opined that due to depression and PTSD, Fogg would be unable to work. *Id*. The ALJ considered this opinion in his decision. He stated that "the opinion is not persuasive because the level of limitation on the form is inconsistent with claimant's own mental status examination in the conservative treating record, including Ms. Vest's own treatment notes, and claimant's activity

---

[8] Short checkbox opinions may properly be discounted, if they are conclusory or unsupported by relevant medical evidence. See *Thomas v. Berryhill*, 881 F.3d 672, 675-676 (8th Cir. 2018).

level." (Tr. at 37).

The ALJ had thoroughly discussed Fogg's mental health complaints and her conservative treatment earlier in the decision. (Tr. at 34-37). And he detailed Fogg's ability to perform some daily activities. He also cited grossly normal mental status examinations. So certainly, he supported his handling of Counselor Vest's opinion with good reasons, in keeping with the new regulations. An ALJ must create a foundation for how he evaluates medical opinions, but he does not have to build and lay every brick.[9] The ALJ properly discounted Counselor Vest's opinion, because the evidence in the record as a whole did not align with her extreme conclusions.

Similarly, the ALJ discounted a 2-page checkbox opinion form about migraines. Dr. Banaji filled out the form on April 16, 2019, specifically because Fogg asked him to. (Tr. at 376-379). He stated that she had migraines twice a week and would miss one day per week of work due to her condition. *Id*. In another clinic note from 2018, Dr. Banaji wrote that Fogg would have "long term effects and

---

[9] See *Norwood v. Kijakazi*, 2022 U.S. App. LEXIS 14834 (8th Cir. 2022) (record as a whole supported ALJ's handling of medical opinion); *Grindley v. Kijakazi*, 9 F.4th 622, 630 (8th Cir. 2021) (inconsistency in ALJ's decision was harmless error, as case was not close call, and record otherwise contained substantial evidence establishing matter at issue); *Synder v. Saul*, U.S. Dist. LEXIS 27125 *10 (N.D. Iowa Jan. 27, 2021) (ALJ's statement that psychiatrist's opinion "does not appear to be generally consistent with the record as a whole, or with [his] own treatment notes" was sufficient where ALJ had cited those notes throughout his opinion), report and recommendation adopted sub nom. *Snyder v. Comm'r of Soc. Sec.*, 2021 U.S. Dist. LEXIS 26385 (N.D. Iowa Feb. 11, 2021*)*; *Kerrie v. Kijakazi*, 2021 US. DIST LEXIS 160956 *60-63 (D. Neb. Aug 25, 2021).

disability from PTSD;" that same note stated that headaches were not responding well to NSAIDs. (Tr. at 433). But as noted above, in 2019, Dr. Banaji recommended conservative measures, like weight loss, exercise, and massage. (Tr. at 381).

Dr. Banaji did not cite to any medical evidence or testing on the 2-page migraine form, or otherwise explain his opinion. The ALJ wrote that Dr. Banaji's conclusions were "not persuasive because they are unsupported and highly inconsistent with the examinations in the conservative treatment record and claimant's extensive activity level." (Tr. at 38). The ALJ did not err in that determination:

Again, the ALJ detailed Fogg's response to conservative treatment, her improvement with counseling, her generally normal mental status and neurological examinations, and her ability to do many daily activities. He also pointed out that she worked as of the hearing date (she used a computer to do administrative work and used a computer for journaling, both of which suggest that migraines were not disabling). (Tr. at 32, 71-73). And Dr. Banaji's notes from 2019 did not evidence disabling conditions. The ALJ's decision *in toto* explains why both medical opinions were unpersuasive, with citations to the record, and the ALJ's specific written statements about the opinions redirects the reader to those citations. (Tr. at 37-38).

Finally, Fogg argues that because the state agency medical and psychiatric

9

experts did not examine Fogg in person, their opinions could not constitute substantial evidence. (Tr. at 102-106, 121-123). However, a reviewing physician's opinion can support a finding that a claimant is not disabled. *Ostronski v. Chater*, 94 F.3d 413, 417 (8th Cir. 1996). The ALJ explained how he evaluated these opinions in his decision and he incorporated the credible portions of the opinions into the RFC. (Tr. at 37-38).

**IV.   Conclusion:**

There is substantial evidence to support the Commissioner's decision to deny benefits. The ALJ gave good reasons for how he evaluated the medical opinions of record. The finding that Fogg was not disabled within the meaning of the Social Security Act, therefore, must be, and hereby is AFFIRMED. Judgment will be entered for the Defendant.

IT IS SO ORDERED this 22nd day of June, 2022.

_____
UNITED STATES MAGISTRATE JUDGE